In re

SONYA D. SIMPSON,

      Debtor.

Case No. 08-21251

Chapter 13

## MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

### BACKGROUND

The debtor filed a chapter 13 petition on February 18, 2008. The debtor's plan proposed payments of $24.46 weekly for 60 months, which results in a "pot plan" totaling $6,360.00. The trustee opposed confirmation, finding the following provision objectionable:

> Debtor will pay one half of the income tax refunds received during the first three years of the plan to the trustee to shorten the overall length of the plan. The plan shall be no shorter than 36 months unless the debtor pays 100% of the unsecured creditors. If the tax refunds shorten the plan to 36 months, any extra sums will go as an additional dividend to claimants. The other half of the tax refunds will be retained by the debtor to help supplement the debtor's expenses and assist with changes in the cost of living during the course of the next three years.

(Chapter 13 Plan ¶ 13, filed February 18, 2008). The trustee argued the plan does not provide for payment of all projected disposable income because it impermissibly limits contribution of one half of the debtor's tax refunds to the first three years of the plan and uses the funds to shorten the length of the plan.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

### DISCUSSION

Confirmation of a plan is governed by 11 U.S.C. § 1325. Under that section, the court cannot confirm a chapter 13 plan, over an objection by the trustee or the holder of an allowed unsecured claim, unless (1) the plan proposes to pay the unsecured claims in full, or (2) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1).

"Projected disposable income" is not a defined term in the Bankruptcy Code. However, "disposable income" is defined in § 1325(b)(2). Disposable income is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended" for the support of the debtor and the debtor's dependents and for the operation of a business. 11 U.S.C. § 1325(b)(2). Current monthly income, as used here, is a new term under BAPCPA, defined as "the average monthly income from all sources that the debtor receives" during the six-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A). Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income on Form B22C.

Because the debtor's annualized current monthly income of $27,133.32 shown on Form B22C is less than the median family income for a Wisconsin household of three individuals, the applicable commitment period is three years. 11 U.S.C. § 1325(b)(4). Thus, the debtor argues that the projected disposable income requirements of 11 U.S.C. § 1325(b)(1)(B) need only be applied for three years, and after that, the plan can make other provisions that do not comply with that statute.

2

This court's colleague has held that income shown on Form B22C, rather than Schedule I, should be used to calculate the current monthly income for a below-median income debtor for the applicable commitment period. *In re Spraggins*, 386 B.R. 221, 226 (Bankr. E.D. Wis. 2008). In this case, line 20 of Form B22C shows Ms. Simpson's current monthly income (after deduction of child support payments, *see* 11 U.S.C. § 1325(b)(2)) is $2,207.11. Her Schedule I shows her actual gross income at the time of filing is $2,095.73, again without child support, for a difference of $111.38. However, calculation of income and proposed plan payments are apparently not an issue here.

The expense portion of Form B22C is applicable only to above-median debtors under a literal reading of section 1325(b)(3), and below-median income debtors such as Ms. Simpson are not required to fill out that portion of the form. Schedule J and those reasonably necessary expenses not included on Schedule J, are instead used to calculate amounts reasonably necessary to be expended by the debtor. Payroll deductions and Schedule J expenses, reduce the actual gross income on the debtor's Schedule I, leaving monthly net income of $106.06 on line 20.c. of Schedule J. Using the B22C gross income figure, less payroll deductions and Schedule J expenses, the debtor would have additional net income of $111.38, or a hypothetical total of $217.44 available to the plan. The debtor's proposed plan of $24.46 per week translates to $105.18 per month. Thus, the debtor's proposed payment comports with reality, if not necessarily what would be required if the Form B22C income figure were used, but that is not the issue I am asked to decide.

The only issue raised by the parties is the treatment under the plan of the debtor's tax obligations and refunds. How chapter 13 debtors' tax refunds should be treated in the context of

determining projected disposable income has generated a significant amount of legal analysis in this district. *See, e.g., In re Spraggins*, 2008 WL 2073947, 2008 Bankr. LEXIS 1512 (Bankr. E.D. Wis. May 14, 2008) (supplemental opinion); *In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wis. 2008) (below-median income debtor's projected disposable income is determined by Form B22C, not Schedule I, and tax refunds need not be dedicated to plan if debtor deducts actual taxes incurred, not amounts withheld, from income); *In re Rither*, 2008 WL 1780934, 2008 Bankr. LEXIS 1278 (Bankr. E.D. Wis. Apr. 16, 2008) (pre-BAPCPA debtor was not allowed to modify plan to limit payments of one half of tax refunds to only the first three years of the newly-extended plan.); *In re Kirsch*, Case No. 07-20338 (Bankr. E.D. Wis. Aug. 15, 2008) (plan which was silent as to treatment of tax refunds where below-median income debtor listed refund as income on Schedule I and expenses on Schedule J; plan could not be confirmed because it violated disposable income requirement of 11 U.S.C. 1325(b)); *In re Walls*, Case No. 06-21228 (Bankr. E.D. Wis. April 10, 2007) (below-median income debtor cannot secure entirety of tax refund received over life of plan by writing such provision in plan; rather, debtor should ask trustee, and if necessary the court, to allow her to keep refund for any particular year based on need for support and maintenance); *In re Balcerowski*, 353 B.R. 581 (Bankr. E.D. Wis. 2006) (for the purpose of determining disposable income, above-median income debtor should estimate, and subtract from income, the actual tax he will incur, not the amount he has withheld from wages).

It has long been the custom in this district, largely unchallenged, to require chapter 13 debtors to commit one half of tax refunds to a chapter 13 plan, unless the proposed plan is to pay 100 % of claims. This was instituted, so legend has it, because tax refunds are disposable

4

income, and a refund is merely the return of more than was needed for a legitimate expense. If a debtor were required to pay the entire refund into the plan, *see, e.g., In re LaPlana*, 363 B.R. 259 (Bankr. M.D. Fla. 2007), a debtor might be tempted to adjust withholding to shave it as close as possible to the actual tax. If the debtor guessed wrong, there could be a tax due, which is not a good thing during the pendency of a chapter 13 plan. We do not want debtors emerging from chapter 13 with new tax debt. By allowing retention of half the refund, debtors would not have as much motivation to underwithhold, and creditors would, to a certain extent, reap the benefits of the debtors' excess income. The requirement was an expediency that takes human nature into consideration, but it also preserved the salutary policies of paying creditors and helping debtors achieve a fresh start.

Enter BAPCPA. Using judgment to determine whether debtors are paying all they can to creditors is no longer allowed, at least for higher income debtors. For above-median income debtors, use of the historical current monthly income figure, less the expenses allowed by the IRS for some purposes and actual figures for others, has created disconnections between required plan payments and ability to pay that are well documented in published cases. For below-median income debtors like Ms. Simpson, the ability to use actual expense figures reduces the disconnection, but it has not been eliminated altogether.

This district no longer requires above-median income debtors to pay one half of their tax refunds into their plans. This change came about because their actual tax expense is allowed as a deduction on line 30 of Form B22C, not the amount they are having withheld from earnings. *See In re Balcerowski*, 353 B.R. 581 (Bankr. E.D. Wis. 2006). If done correctly, the debtor would have no refund, so there is no reason to require it. Given the difficulty with such a calculation,

5

however, this court's colleague provided an option.  In *In re Stimac*, 366 B.R. 889 (Bankr. E.D. Wis. 2007), the court allowed an above-median debtor the option of correctly predicting – as nearly as possible – the actual tax on line 30, in which case no tax refund was required for the plan, or the debtor could deduct tax withheld from paychecks as long as 50% of any tax refunds were paid into plan.  A correct line 30 tax deduction, usually derived from the most recently filed return, is presumed to be an amount actually paid in taxes.  If current circumstances were starkly different, the debtor would have the opportunity to rebut the presumption by showing taxes paid in the most recent prior year would be inaccurate.  The trustee would then have the opportunity to challenge the accuracy or reasonableness of the debtor's calculations.  Thus, in keeping with this district's tradition of rough justice within the context of statute and policy, the *Stimac* court allowed the debtors the option of using actual withholding as a deduction for taxes, with 50% being paid into the plan to adjust any miscalculation in actual taxes.  The full 100% would have been more accurate, but as was explained earlier, 50% has been the custom in this district and for the most part has worked well for all concerned.

Not content with retaining 50% of what would otherwise be disposable income, this debtor wishes to pay one half of her tax refunds into the plan for three years, but to retain all refunds for the remaining two years of the proposed plan.  The refunds that are paid into the plan would shorten the term of the plan, in essence prepaying the amounts that would otherwise be paid into the plan in years four and five, but the term would not be shortened to less than 36 months unless 100% of claims were paid.  This identical provision was rejected by this court in an unpublished decision, *In re Rither*, 2008 WL 1780934, 2008 Bankr. LEXIS 1278 (Bankr. E.D. Wis. Apr. 16, 2008), in the context of a plan modification after 36 months in a pre-

6

BAPCPA case. I reasoned that neither the disposable income test nor a change in circumstances were required for a plan modification under 11 U.S.C. § 1329(b)(1), but good faith always is. Since the debtor in *Rither* was apparently able to live on her current income plus one half of her tax refund, no allegation having been made to the contrary, authorizing her to retain all of a relatively substantial income tax refund while enjoying the benefits of chapter 13 beyond 36 months was not fair. This debtor is trying to do the same thing, but she is trying to do so in the initial plan and under a different statutory regime.

The *Spraggins* court determined that below-median income debtors were not required to dedicate tax refunds beyond the three year applicable period, even if the plan proposed a longer term. *Spraggins*, 386 B.R. at 228. The court expounded its reasoning in its subsequent supplemental opinion:

> Given the nature of a tax refund as the over-estimation of an expense that is incurred as of the date of the petition, the Court does not find it logical that a below-median debtor must continue to dedicate tax refunds beyond the three year applicable commitment period. In other words, a tax refund in the fourth year of a plan does not tie into the BAPCPA concept that projected disposable income is the debtor's historical income less expenses incurred as of the date of the petition. Furthermore, if the Court orders the turnover of tax refunds, then under the same rationale, it should also require a debtor to contribute any other expenses that were over-estimated or have decreased since the date of the petition. For example, if the below-median debtor's reasonably necessary expense for transportation in May 2008 is based on gasoline costing $4 per gallon, but in 2012, gasoline prices revert to $2 per gallon, the debtor whose plan was confirmed in 2008 would not be required to contribute the excess created by this over-estimation of expenses to the plan. This is because the expenses in the projected disposable income test are to be estimated as of the date of the petition. The same rule should apply for tax refunds. An over-estimation of taxes incurred should be part of the disposable income calculation for three years, but in year four and five, the calculation is so remote from the BAPCPA definition of projected disposable income so as not to qualify. Finally, in this Court's experience, debtors have more trouble with the tax refund requirement as the years tick by. Arguably it may not be feasible to require the debtor to dedicate these refunds. As long as the debtor makes all the periodic plan payments, and contributes one-half the tax refunds for the three-year applicable commitment period, BAPCPA's projected

7

disposable income requirement has been satisfied.

*Spraggins*, 2208 WL 2073947 at *4.

Predicting the future, especially five years out, has always been problematic. For that matter, so is predicting three years into the future. BAPCPA has not suddenly made anyone prescient. The code only asks for a projection based on income and expenses when the plan is confirmed, and if subsequent events require a change for certain reasons, that is what modifications are for. *See* 11 U.S.C. § 1329(a). While the disposable income limits proposed by *Spraggins* might be appropriate under some situations, I am unwilling to make a bright line rule that there is no such requirement after year three.

This debtor is only required to commit 36 months to a plan. 11 U.S.C. § 1325(b)(4)(A)(i). During that time the debtor is proposing to make payments in an appropriate amount based on, among other things, her income and actual tax expense. The actual tax expense is determined by allowing her a deduction for amounts withheld, and then corrected by requiring payment of 50% of her refund back to the plan and unsecured creditors. But she wishes to retain the protections of chapter 13 longer than would be required, while also retaining more than her disposable income, without a showing that circumstances necessitate such a change or provision. In essence, she is using the bankruptcy law to pay all she can for three years, but after that, she is proposing an initial plan that on its face is stating she is *not* going to pay all she can, even though she enjoys the benefits of chapter 13. I believe this is a misuse of chapter 13, and does not constitute good faith in proposing the plan, or alternatively, does not constitute cause to extend the plan beyond three years pursuant to 11 U.S.C. § 1322(d). Therefore, the trustee's objection to confirmation is sustained.

8

A separate order shall be entered accordingly.  The debtor shall have 30 days to propose a new plan consistent with this decision.

July 3, 2008

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court